MERCEDES DEL TORO IRIZARRY, ETC., demandante y recurrida, *v.* JORGE BLASINI GONZÁLEZ, demandado y recurrente.

*Número:* R-67-329          *Resuelto:* 21 de noviembre de 1968

*Miguel Hernández Colón,* abogado del recurrente; *Yamil Galib Frangie* y *Luisa María Capó,* abogados de la recurrida.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo, Rigau y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Mediante documento suscrito en 25 de marzo de 1964 ante el Notario don Jorge Díaz Cruz, la recurrida doña Mercedes del Toro Irizarry cedió en arrendamiento al recurrente Jorge Blasini González un predio rústico de terreno con cabida aproximada de 91.30 cuerdas sito en el barrio Montalva de Guánica. A continuación las condiciones del

contrato arrendaticio que es necesario considerar a los fines de dilucidar los planteamientos que se hacen en el presente recurso:

"—A—El término de este arrendamiento es de un año contado a partir de hoy, disponiéndose, que el arrendatario Sr. Blasini González tendrá libre opción para extender dicho término a diez (10) años mediante nueve prórrogas consecutivas de un año cada una, y se entenderá que el arrendatario hace uso de la opción anual a él reservada a menos que expresamente renuncie la misma y manifieste su deseo de terminar el arrendamiento mediante notificación escrita a la arrendadora o a sus sucesores con no menos de sesenta días de antelación a la fecha de expiración anual del término. Durante la prórroga regirán las mismas condiciones y pactos de este contrato.

—B—El canon de arrendamiento es de DOS MIL DÓLARES ($2,000.00) anuales pagaderos por anualidades anticipadas en los primeros treinta días de cada año.

—C—La arrendadora doña Mercedes del Toro de Pérez concede opción a su arrendatario don Jorge Blasini González para comprar la finca arrendada por precio de cincuenta mil dólares ($50,000.00), opción que estará en vigor por todo el término de arrendamiento y durante la vigencia de este contrato. El incumplimiento de esta opción conlleva una penalidad de cinco mil dólares ($5,000.00) que pagará la parte responsable del incumplimiento a la otra.

—D—La arrendadora o sus sucesores quedan obligados a ratificar este contrato mediante documento público inscribible en el Registro de la Propiedad una vez cumplidos los trámites legales actualmente encaminados a restablecer a la arrendadora como titular registral de la finca."

Surgieron desavenencias entre las partes que culminaron en el inicio por la arrendadora en el mes de julio de 1966 de una acción interesando una determinación sobre la extensión del término contractual convenido,[1] el incumpli-

---

[1] La demandante alegó que el término convenido era de sólo un año, a pesar de lo cual el demandado le presentó para su firma un contrato que permitía su prórroga por nueve años consecutivos y concedía

miento por el arrendatario de sus obligaciones de pago del canon estipulado y del ejercicio del derecho de opción de compra, y la fijación de la indemnización correspondiente. Reconvino el arrendatario fundándose en el incumplimiento por la actora de su obligación de elevar a escritura pública el contrato e igualmente solicitó la concesión de los daños que ello le ocasionó.

Trabada así la controversia, y celebrada la vista, el tribunal de instancia dictó una sentencia en 9 de febrero de 1967, con los siguientes pronunciamientos: (a) que el contrato escrito de arrendamiento era eficaz y válido y representaba el convenio habido entre las partes; (b) que al rehusar el requerimiento héchole por la demandante en 16 de marzo de 1966 para que adquiriera la finca conforme a los términos de la cláusula de opción, el demandado incumplió el contrato, y debe abonar por tanto la indemnización estipulada de cinco mil dólares; (c) que el demandado debe satisfacer los cánones que se devengaron para los años 1965–66 y 1966–67, cuyo pago por anticipado habíase dispuesto; y, (d) que procedía el desalojo de la finca arrendada en o antes del día 24 de marzo de 1967. Nada dispuso en cuanto a la materia alegada en la reconvención, motivándose con ello que el demandado solicitara determinaciones de hechos sobre lo expuesto en la reconvención y las conclusiones de derecho que de las mismas se derivaran, en consideración a que ambas partes enfrentadas habían quebrantado las prestaciones a que se obligaron.

En 22 de mayo de 1967 el tribunal a quo emitió una opinión y sentencia para "resolver la reconvención"—en la cual incorporó por referencia la anterior de 9 de febrero— cuyos pronunciamientos salientes fueron (a) establecer la infracción por la demandante "por razones de temeridad"

---

una opción para adquirir el inmueble; y que, al tener conocimiento de los términos que se figuraron en el documento escrito, la demandante repudió el contrato.

de la cláusula que la obligaba a elevar el contrato a escritura pública susceptible de inscripción, y, (b) fijar en $4,801.65 los daños ocasionados al arrendatario por tal incumplimiento. Dictaminó además que los incumplimientos de Blasini ocurrieron a partir del 25 de marzo de 1966, al no ejercitar dentro del plazo que se le concedió la opción de adquirir la finca, y 30 de abril de 1965, al no satisfacer el canon anticipado correspondiente a la anualidad 1965–66; (2) el incumplimiento de la demandante, a partir del 1 de octubre de 1964, fecha en que ya el inmueble figuraba inscrito a su nombre, y por tanto, en aptitud de otorgar el documento público indispensable para producir la inscripción del arrendamiento. Vemos, pues, como el quebrantamiento por la arrendadora precedió al del arrendatario.

Ante estas dos sentencias, "habiendo—previo acuerdo entre las partes—reexaminado este caso en su totalidad," el tribunal emitió una nueva opinión y sentencia en 10 de octubre de 1967, que reproduce sustancialmente la del 22 de mayo, excepto que la indemnización se redujo de $4,801.65 a $3,340.85.

Ambas partes recurrieron. (3) El arrendatario recurrente apunta que el tribunal de instancia erró en la interpretación de los términos contractuales sobre la opción, y por ende, en imponerle el pago de la cláusula penal provista para el incumplimiento, así como al ordenar la entrega de la finca no empece haber precedido el incumplimiento de la arrendadora.

---

(2) A este respecto fundóse en que a pesar de que el arrendatario había remitido a la arrendadora el canon de referencia en 30 de abril de 1965, ésta lo rechazó y lo devolvió, correspondiendo entonces al demandado la obligación de consignarlo judicialmente a disposición de aquélla.

(3) El recurso interpuesto por la arrendadora fue desestimado por falta de jurisdicción al presentarse fuera del término de 30 días, convirtiéndose así en firmes los pronunciamientos de la sentencia relativos al incumplimiento por ella y a la indemnización que debe consecuentemente satisfacer.

1. En 16 de marzo de 1966 la arrendadora dirigió una comunicación escrita al arrendatario reafirmando su repudio al contrato, especialmente en cuanto se refiere al término de un año y las nueve prórrogas anuales sucesivas, pero manifestándole que "a los fines de dejar terminado este enojoso asunto, por este medio le concedo hasta el día 25 de marzo de 1966 la oportunidad de comprar mi finca por el precio de contado de Cincuenta Mil Dólares", apercibiéndole que si en el plazo concedido no se hacía uso de la opción de compra aquí ofrecídale, entendería que había sido rechazada. Le conminó además a remitir el importe de los mil dólares por la "retención y disfrute" del inmueble desde el 25 de marzo de 1965 al 25 de marzo de 1966.

A estos requerimientos limitóse el arrendatario a recordarle a la arrendadora que ella había devuelto el cheque que se le había remitido en fecha anterior por el canon correspondiente al año 1965-66, y que "si usted interesa dicha cantidad de dinero, espero que usted me avise para enviárselo."

El tribunal de instancia determinó que el arrendatario había incumplido el contrato al no hacer uso de la opción de compra que se le concedía en virtud de la cláusula II C a pesar de haber sido requerido para ello por la arrendadora. Concluyó que "la obligación que impone dicha cláusula es una recíproca y bilateral y cuyo incumplimiento por parte del demandado lo obliga a pagar a la demandante la penalidad allí fijada." Incidió.

En términos sencillos Castán([4]) dice que "se llama contrato de opción al convenio por el cual una parte [llamada concedente, promitente ú optatario] concede a la otra [llamada optante], por tiempo fijo y en determinadas condiciones, la facultad, *que se deja exclusivamente a su arbitrio*, de decidir respecto a la celebración de un contrato principal."

---

([4])*Derecho Civil Español, Común y Foral* (8.ª ed., 1956), tomo 4, pág. 43.

Puig Brutau, [5] al referirse a sus efectos, señala que el optatario queda enfrentado con el optante, quien "está en libertad para dejar perfeccionado el contrato o para desistir de hacerlo durante el tiempo señalado." Véanse, *Pérez* v. *Sampedro*, 86 D.P.R. 526, 529 (1962) y *Collazo* v. *Conesa*, 70 D.P.R. 155 (1949); cf. *Rossy* v. *Tribunal Superior*, 80 D.P.R. 729, 740 (1958). En consonancia con la doctrina, el Tribunal Supremo de España mantiene que la perfección de la opción depende exclusivamente del optante. [6] En igual sentido se pronuncian Puig Peña, [7] Federico de Castro [8] y Guaroa Velázquez. [9] Véanse también, Ossorio y Gallardo, *El Contrato de Opción*, Madrid, 2.ª ed., 1930; José María Mengual, *La opción como derecho y como contrato*, R.G. de L. y J., 1936, págs. 131 y ss.; Ramón Gayoso, *Cuestiones sobre el contrato de compraventa*, Rev. D.P., 1927, págs. 193 y ss.

Examinada la cláusula contractual que vincula a las partes resulta un contrato de opción válido con la obligación unilateral típica del vendedor que antes se ha señalado. Así, aparece que (a) la arrendadora concedió al arrendatario la facultad de decidir sobre la celebración del contrato principal de compraventa, (b) con carácter exclusivo, (c) por un plazo cierto que coincide con el de vigencia del contrato, y (d) sin otra formalidad que la manifestación oportuna de lo que decida al arrendatario.

■ Aparentemente el tribunal de instancia interpretó la existencia de obligaciones bilaterales derivándolas tal vez de la disposición final que penaliza su incumplimiento—"que

---

[5] *Fundamentos de Derecho Civil* (1956), tomo II, vol. II, pág. 51.

[6] Sentencias de 23 de marzo de 1945, Jurisp. Civil (2.ª Serie), tomo X, pág. 294 y 18 de enero de 1947, Jurisp. Civil (2.ª Serie), tomo XVII, pág. 238.

[7] *Tratado de Derecho Civil*, tomo IV(2), pág. 511.

[8] *La Promesa de Contrato*, Anuario de Derecho Civil, tomo III, págs. 1163 a 1167 y 1177 a 1179.

[9] *Los Pequeños Contratos*, mimeógrafo, 1942.

pagará la parte responsable del incumplimiento a la otra"— pero esta redacción un tanto imprecisa no es suficiente para desnaturalizar y desconfigurar el verdadero convenio entre las partes, una opción bajo la cual sólo surge la obligación unilateral de la arrendadora optataria. Siendo ello así, es la arrendadora la única a quien puede imponérsele la penalidad en caso de inejecución; por sus propios términos no alcanza al arrendatario y por tanto, constituyó error la determinación de que el rehusar ejercitar la opción quedó sujeta a la satisfacción de los daños líquidos.

2. Impugna también el arrendatario recurrente el pronunciamiento de la sentencia que decreta su desalojo del inmueble por haber incumplido el contrato en lo que se refiere al pago anticipado del canon anual en 1965 y 1966. Arguye que, habiendo precedido el quebrantamiento de la arrendadora en la obligación de elevar el contrato a escritura pública, quedó relevado del cumplimiento de su prestación, fundándose en la reciprocidad que caracteriza las obligaciones bilaterales.

En las obligaciones bilaterales o sinalagmáticas la obligación asumida por cada uno de los contratantes tiene por causa la prestación que le ha sido prometida en cambio. Es lo que se denomina la mutua condicionalidad. De no ejecutarse esta prestación por cualquier motivo la obligación correlativa cesa de tener causa. De ordinario estas prestaciones son de cumplimiento simultáneo. Pero hay casos en que no hay siempre lugar a la ejecución simultánea como en el arrendamiento que por su propia naturaleza—contrato de tracto sucesivo—se opone a tal simultaneidad. Así el arrendador debe poner al arrendatario en el goce pacífico de la cosa arrendada y surge entonces la obligación recíproca del pago del canon convenido. De ahí que es cuando el arrendador no procura al arrendatario el goce prometido que éste puede invocar la excepción del contrato no cumplido. Veláz-

quez, *Las Obligaciones según el Derecho Puertorriqueño*, 1964, págs. 70–72.

■ De lo expuesto resulta que la obligación quebrantada por la arrendadora no podía sostener la defensa de obligación no cumplida. Aparece que al arrendatario, independientemente de las diferencias entre las partes sobre los términos del contrato, se le ha mantenido ininterrumpidamente en el goce y posesión del inmueble arrendado. Subsistía, por ende, su obligación de pagar la renta. El pacto relativo a la inscripción del contrato en el Registro de la Propiedad es uno de carácter accesorio o complementario, *Municipio* v. *Vidal*, 65 D.P.R. 370 (1945), Sentencia del Tribunal Supremo de España de 5 de enero de 1935, Jurisp. Civil, t. 217, pág. 36. Cf. *Vélez* v. *Ríos*, 76 D.P.R. 860 (1954), cuyo incumplimiento no relevaba al arrendatario del pago de la renta. La sanción por su incumplimiento no tiene consecuencias en la esfera de la reciprocidad, y su única sanción es la que precisamente ha logrado el arrendatario, el resarcimiento de los daños que con ello se le ocasionaron. Véase, *González* v. *Goenaga*, 51 D.P.R. 179, 185 (1937).

Es cierto que el arrendatario remitió a la arrendadora el canon vencido en marzo de 1965 y le fue devuelto. Pero desde entonces, y a pesar del vencimiento de los cánones para los años siguientes, no se ha intentado su pago ni se han consignado judicialmente. Sólo queda la disposición anunciada por el arrendatario deudor de cumplir sus obligaciones susceptible de generar a lo sumo las consecuencias de la llamada *"mora accipiendi"* en cuanto al pago de intereses. *Central Vannina* v. *López*, 259 Fed. 198 (1st Cir. 1919).

No obstante lo expuesto, y atendida la naturaleza de la acción que se ejercitó—decreto declaratorio—el pronunciamiento de la sentencia debe limitarse a decretar la resolución del contrato entre las partes, sin perjuicio del ejercicio de las acciones que corresponda para gestionar la entrega

del inmueble y el pago de la indemnización que corresponda por la posesión de la finca desde que ocurrió el incumplimiento. Art. 1077 del Código Civil, 31 L.P.R.A. sec. 3052; Sec. 8 de la Ley de Sentencias Declaratorias, 32 L.P.R.A. sec. 2998.

3. No existen razones para alterar el pronunciamiento que impuso a ambas partes el pago de honorarios de abogado.

*Se modificará la sentencia para eliminar el pronunciamiento que condenó al demandado recurrente a satisfacer a la demandante recurrida el importe de la penalidad, y así modificada, se confirmará.*